Okay, what is now our last case today is Sutton Siding & Remodeling, Inc. v. Pam Baker. That's case number 415-0956. For the appellant, we have Jeffrey Richardson, and for the appellee, Thomas McConaughey. Thanks to both of you for coming a little bit early. Last week, we had case counsel. This allowed us to bump up our schedule just a little bit so we can get home in time to watch the Cubs tonight. You may proceed. Well, thank you. May it please the court and counsel, my name is Jeff Richardson. I came over for bankruptcy cases today and went back to meet a client. I thought I had plenty of time, then the call came in. I told my secretary, I kind of felt like I was getting ready to run a race. I was ready, and they said, good, the race is at 2 o'clock. So we'll see how we do. I represent plaintiff appellant Sutton Siding & Remodeling. This is Logan County primarily mechanics lien case. It comes to this court in kind of an odd posture. I don't know if I've ever had a case. Ms. Baker, of course, is the homeowner who defended this case through two attorneys until her counsel, Mr. Lipsky from Petersburg, passed away. Nobody's heard from her since then. So when I wrote the brief, I was really writing the brief as both aspects of the case, which started off with Judge Goder, the original trial judge, striking any reference to the construction contract my client had, and he struck it as an exhibit, struck, can't reference it in the complaint. So we went forward on that caution. I briefed that, but it was primarily Ms. Baker's issue to respond to, so I'm not going to try and guess at what arguments she might have made had she responded. I'll certainly respond to any questions the court has. So I'd like to focus my comments on mechanics lien aspects of this case. Before you go there, I have a question on this court's jurisdiction. There's still at least a count or two pending at the trial court level, correct? Quantum Merrill. Just one on Quantum Merrill? I believe that's correct, Judge. See, we had Judge Funk, who ultimately inherited the case, kept the contract action going further. He found, and I think I know where the court's going, that he couldn't revisit Judge Goder's decision striking everything because the motion to reconsider I filed he felt was untimely, and that, in fact, he didn't have jurisdiction to consider that. I believe that's incorrect. But I think your question is something different than that, and that is, can you really even make that decision? Yeah. I was thinking there was both Quantum Merrill and oral contract, but it doesn't really matter for both. No, there's something still down there. Yes. But there's nothing still pending at the trial court level regarding... SEFCU. SEFCU. And, Ms. Baker, as it relates to whether we got a mechanics lien case, and why we felt this is so important is this. We did the work, okay? It was an insurance job. We didn't get paid for it. If we don't have a mechanics lien, she walks down to the bankruptcy court tomorrow because, say, the insurance money's spent. We get a nice bankruptcy discharge because she didn't do anything wrong. She didn't steal her money. She just didn't pay it. They get a fire house, a house that was totally destroyed almost by arson, and don't have to recognize a lien priority because we have none. So that's why we're here. We didn't feel having what we had left against Ms. Baker. I mean, most of the cases were really old. And if we have to go back and try it, and that's all we tried, then that's what we'll have to do. But that's not the posture we want to have. Well, it seems to me that the court would have jurisdiction on issues as they pertain to SEFCU, but not necessarily as to Baker. What's your feeling about that? My feeling on it is anything that pertains or relates to the mechanics lien and how the court dealt with it and the rulings that related to the mechanics lien, including the Judge Funk's ruling that said, this contract date that's in the lien, which was October 4th, 2012, and the actual date, November 14th, that's failed. So to me, that's all part and parcel of the mechanics lien. You can't really get to the issue on the mechanics lien by pretending somehow the contract issue is still there. It's not. It's a quantum merrill case. So I believe the court can decide those issues. Well, as far as I can tell, all the mechanics lien counts include SEFCU issues. Yes, that's correct. I'm sorry I've interrupted you there. No, I think it's here, and that's fine because I didn't come to repeat my brief. What I'd like to do is kind of focus in on what I see because Judge Funk's decision as to the mechanics lien really focused on it. It's a date case. It's primarily a date case. And I looked at the cases Mr. McGonaghy and I cite, and there are really four date cases in there. You have the Supreme Court case and the United Court v. Holman case, which is a case from back in the 30s. There's the Peter Hartman case v. Capital Bank. There's the North Shore and those two. The Volman case is the wrong date of when the work was completed. The Peter Hartman case was wrong contract date stated in the mechanics lien. The North Shore v. Sheffield case, which is the most recent one, was what date was the work completed. It was inaccurately stated. And then you've got the Braun-Skiba case that I didn't raise my brief, but Tom did, Mr. McGonaghy did, and we responded to. In three of those four cases, the mechanics lien was ultimately upheld on appeal, firstly. Braun-Skiba case, the mechanics lien failed. I think there's a real reason why. I think the results of each of those cases really turn on whether the date in question, the error in the date, materially affected, much less prejudiced, the defendant's rights. You start out with the United Court case, and that's one where they said their completion date was way earlier than when they completed the case. And the Supreme Court looked at this. As I recall, the trial court ruled in favor of the plaintiff. The appellate court reversed, and the Supreme Court reversed the trial court, and they said, in essence, it doesn't matter, and that this is not a game to catch people by misspellings or typos. The issue is protecting folks' rights. And instead, in essence, what the Supreme Court said was, there was nothing about this error in the date that materially affected their rights beyond, we're not going to let them prove up work after the date that they set forth in the lien. So the mechanics lien prevailed. You've got the Hartman date, which was the wrong date in the contract. It was a wrong date, not by much. And essentially, the Hartman case, they looked at that and said, the lien is still good. They looked at this court's case in Ronnie. They looked at this court's decision in Candice, whatever it is, and they looked at the bail case, maybe the bail case, this court's decision. And in essence, that court, the upheld court, concluded that the misdescription in the contract date does not fall within the parameters of those three decisions and upheld the mechanics lien. The North Shore Bank case was another incorrect completion date, and on appeal, that mechanics lien was sustained and upheld because it did not materially affect the defendant's right to notice. That's what the court said. Now, the Braun-Skiba case was the case where the mechanics lien failed, and in that case, the completion date of that work was two years off, and it was materially off. They said they completed the work in 1987 when they completed the work the same day, two years later, in 1989. So anybody that would look at that lien would say, well, my goodness, you've got to file within four months to affect me. That's two years ago. So that did affect, in my opinion, the right to notice. Now, Sefke was saying that because they're a third party, that we really have to construe this strictly. What's your response to that, Mr. Richardson? My response to that is in the United Corp versus Bowman case, the bank was involved. It was a third party. In the North Shore case, the bank was involved, which is a third party. And I think it, although certainly the farther away that you get from the participating parties, it seems to me the more the court should scrutinize does this really materially affect the rights and maybe take a more narrow view on that. But when you get to the bottom line, Your Honor, the answer is the same. It did not materially affect the rights. Okay? The statute itself does not even require that you state the date of your contract. Not only that, Your Honor, there is nothing about the date of the contract that starts the clock running for the effective date of the mechanic's lien. Okay? So I would argue to the court, even three of these cases dealt with completion dates, and still two of those, the lien holder prevailed even though the completion date does affect whether your mechanic's lien is effective or not. So our position is we didn't have to say the contract date. Yes, we did say it wrong. It didn't affect notice to anybody because that contract date didn't trigger a thing. Okay? And unlike the Romney case, the case before this court, the one that they all cited, that case involved the wrong party. It involved the wrong contract. Now certainly it involved the wrong date of the contract, but if you're going to identify the wrong contract, chances are you're going to get the date wrong too. But that's not what the Romney decision turned off. And so in my opinion, Judge Funk felt like he was obliged to follow Romney under the facts of this case. And in my opinion, his deference to that case was inaccurate and error because Romney did not compel that result. There's nothing about the Romney decision. If you look at the end, the court says you got the wrong party. You didn't say the party you contracted with. You didn't describe the right contract. Sure, the date was wrong too, but it would be a real coincidence if the dates on the two contracts were the same. So essentially that's our position. I don't want to take more of the court's time, but I wanted to emphasize those cases. I'll be happy to respond to any questions. Counsel, I do have a question in regards to the agreement that's attached to the complaint as an exhibit. What is the relevance of the agreement relative to the claim to foreclose the mechanics lane? What is the relevance of the agreement to that claim? The agreement is attached as an exhibit. In my opinion, my client attaches those agreements in an attempt to fully explain and give a description of the type of work it was doing. If I'm catching the court's drift. Why was the agreement attached to the complaint? What was the point of it? To describe the work. It's not a requirement to foreclose mechanics lane. No, sir, it is not. Was it in order to prove a contract on the breach of contract claim? I view it as something like when I plead contract action and I say I entered into a contract with Ms. Jones to do this and this and this, a copy of which is attached here to exhibit A. I understand that the Code of Civil Procedure says attach the contract or describe it, but the mechanics lane is not much different. It doesn't say attach the contract. It says describe it, but I think you can describe it by attaching the contract, and I think out of an abundance of caution, if you attach what you did, then nobody's going to be able to come back and say, well, saying repaired the roof or repaired the fire damage is not a sufficient description of the work you did. Well, this motion to dismiss that sought to strike the agreement from the complaint, I'm just trying to get a handle on why that was done. Why that was done was that Mr. Bates, which was the first attorney in this case, took the position that the Homeowners Repair Act required that an estimate be given, and because that wasn't done, this wasn't a contract. It violated the Homeowners Repair Act. And if you look at the original ruling of Judge Yoder, that's what Judge Yoder ruled. He didn't say the mechanics lane couldn't go forward. He said you violated the Homeowners Repair Act, and in fact, the statute had changed. The Supreme Court had said the only thing you get out of a defect in the Homeowner Repair Act and its requirements is you may have an affirmative right to sue under the Consumer Fraud and Deceptive Practices Act. So it was really addressed to the Homeowners Repair Act, but it spilled over into the mechanics lane, and that's where we find ourselves. I really view this as something that started off with a bad ruling, and, of course, snowballed to here. Well, so let's say that that is the case. Ultimately, how does that then affect the propriety of the court's dismissal of the count to foreclose the mechanics lane? If the agreement wasn't particularly relevant to that count, in regards to the dismissal of the mechanics lane act, then the striking of the agreement would be no harm, no foul from your standpoint, I would guess. Arguably, yes, Judge, but at the end of the day, what the court focused in on is you got this contract that you say was in X date, and it wasn't, and so you inaccurately describe it. So I view the two as sort of intertwined. I don't really know how you can get around both of them. Well, on appeal here, are you arguing that the trial court striking of the agreement prejudiced your ability to bring the count to foreclose the mechanics lane? No. Okay. No, I'm not. I am arguing that the judge made an error. I am arguing that Judge Funk, because that wasn't a final and appealable error, and it's my understanding, a final and appealable decision, it's my understanding that the trial court, until it loses jurisdiction, the judge at any time can say, you know, I thought over that evidentiary ruling. I may have struck this, or I threw out that language in your complaint, and within my discretion and within my authority, I decide I was wrong. And that's what happened, I believe, here. I think Judge Funk made an error and said, no, boy, anything you ask me to look at again, I can't even look at it on my own if more than 30 days passes. And I don't think that's the law at all. Well, and then, I'm sorry, but still in regards to that exhibit, so if it's not relevant to the account on the complaint that foreclosed the mortgage, are you asserting here that we need to, that it isn't important to the account for the breach of contract? Yes, it is, Judge, because what Judge Funk said was, I'll let you keep trying to prove an oral contract, but only if you can show me it was made on the date that this writing exists. And if you don't, you lose. Well, we couldn't. There wasn't an oral contract. There was a written, and it had a date. That date was the date, and it was misstated in the mechanics lien, but the two don't really jive. But there was an amended mechanics lien, wasn't there? Yes, but it didn't change the date, Judge. It changed the amount. I think it went up or down like $500 and out of an abundance of caution, because you have those cases in mechanics liens that say, if you overstate what you're owed, you're defrauding somebody, they amend it to say, well, it's really not this, it's this. What was the totality of the description of the contract as set forth in the amended mechanics lien? My recollection, Judge, and I didn't look at it before. Was it just the amount? The change was the amount. It was not the description of the work. Well, what was the description? I think it was fire restoration or something like that. Okay, and then with the wrong contract date of November 14th. Yes, sir. And there's no explanation as to why October 4th wasn't used? I think actually what happened was November 14th was the start date, and the date at the end was the conclusion date with the contract date. The date she signed up was not the day we started the work. I know I read someplace, I don't know if it's accurate, that the start date actually occurred before November 14th. I know I saw that. I can't address that. That was the only conclusion. Okay, but in any event, I think Case Law says this could have been done. A mechanics lien was not asserted based upon an oral contract. That was not done here, was it? It was, I think, in the amendments, Judge. We tried to preserve the written contract because there are cases that say, if you say you had a written contract and the judge throws it out, the court throws it out, if you don't complete it for the purpose of preserving it on appeal, you give it up. Okay, I want to clarify. Are you saying there is a count based upon oral contract which also includes the mechanics lien issue? In other words, we're going to enforce the mechanics lien by an oral contract versus a written contract. There is a reference to the contract in the mechanics lien count, yes. And what we were trying to do – To a written contract, that's what I'm trying to specify, not an oral contract. I think that's correct. Okay. Thank you. Thank you. You'll have rebuttal. Thank you. Mr. McConaughey. Yes, sir. Thank you. May it please the Court. Tom McConaughey, here for appellee defendant, Citizens Equity First Credit Union, SEFCU. As you know, SEFCU holds a mortgage on the property on which the lien is claimed, and for purposes of the mechanics lien act, SEFCU is considered to be a third party entitled to additional protections. Section 7 of the act gives a mechanics lien claimant two chances to go after a third party claimant. The first is by filing a proper claim for lien within four months of completion. The second is by filing suit within four months of completion. In this case, we have a claim that said the work was completed on May 3rd of 2013. Claim for lien was filed on June 11th of 2013. Suit was filed September 5th of 2013. So what we have is a claim that's within the four-month limit as alleged. We don't have a suit that's within the four-month limit as alleged, so we really do need to focus on the claim itself because that's the only basis on which the lien claimant can proceed against SEFCU. The claim identifies a contract that was dated November 14th of 2012 and lists an agreed contract amount of a little over $116,000. The agreed contract amount, of course, is significant, and to my mind, is where the Home Repair Act comes in because the Home Repair Act requires you to state a contractual amount. Rather than filing a claim that said that, the claimant filed the complaint that indicated the contract was entered into on October 2nd without any amount. So we have a mechanics lien claim that misidentifies the month of the contract, the date of the contract, and also states a contract amount when there wasn't one. Now, as we started to talk about Ronning, this Court's decision, this Court has indicated, first, that the burden is on the lien claimant to establish their compliance with Section 7, and also that their claim is valid only if the requirements of Section 7 are scrupulously observed. In Ronning, there were several things wrong with the claim for lien, but I think the critical point that the Court made in Ronning was that the claim for lien identified the wrong contract. And a third party, looking at the claim for lien, is not going to be able to figure anything out because it identifies a contract other than the contract that the claimant has proceeded to pursue. Well, I assume you could have figured it out. What difference would it have made? What are you going to do about it? If they filed it properly and named the contract properly, they're still going to jump over SEFCU as a mortgage holder, aren't they? Well, if they had done everything correctly, then we would be fighting over the enhancement doctrine. But every Court that's ever looked at Section 7 has agreed that the requirements of the Mechanics Lien Act are to be strictly construed in determining compliance. I guess my point is you're saying, well, you didn't get proper notice of this contract work that was going on by the proper filing of the Mechanics Lien, but what difference would it have made to SEFCU? We had a legal argument today, but I'm trying to say, if they had done their job properly, there's nothing that SEFCU could have done anyway. Which would change or enhance their rights. Am I wrong about that? Well, it's a predicate to liability. Say that again? It's a predicate to liability. It's the only way that SEFCU can be liable, is if they have complied with Section 7 within the time frames of the Act. That's the whole statutory scheme. I mean, that's the legislature. That's the requirement of the Act. It's required to be strictly construed, and it's required that you comply with the Act. And once you've complied with the Act, then you can get to other issues. So it's possible that had they filed the completely correct Mechanics Lien Act, we would be talking now about additional items in the case. I mean, this is in the early days of the case, notwithstanding it's an old case. I can't tell you. I mean, we've not done any discovery. Okay, I get your answer then. Some other issues may have presented themselves where it's not there. Right. And then your first step is to say, you don't even get to get there. Okay. Exactly. You've answered my question. Thank you. And before you go on to your next point, initially you were talking about the interplay between the written agreement that was attached as an exhibit and the complaint to foreclose, the count seeking to foreclose the Mechanics Lien. I asked the President Counsel this. Was it necessary for the count to foreclose the Mechanics Lien that there be a written agreement attached to the complaint? When I asked what significance or relevance was the striking of the written agreement to the count to foreclose the Mechanics Lien? That's a question I've puzzled over, to be honest with you, because of the posture of this case. It's been a little bit confusing going back to it. I think that the answer is, first of all, as a matter of procedure, you have to attach the contract. And second, in Section 11 of the Mechanics Lien Act, which I might have looked at if we didn't start an hour earlier, there are requirements for pleading. And I think part of the pleading requirements are to identify things like the contract with more specificity and also to identify the date of completion. So I think that attaching the contract is a way of meeting the statutory pleading requirements for Mechanics Lien actions. So I guess in that regard, I'm probably agreeing with Mr. Richardson. Well, couldn't those facts have just been alleged in the count without attaching anything? And then perhaps you might have a disparity between what's alleged in the complaint and what's attached. But let's just say you didn't have the written agreement attached at all. Is it necessary in order to foreclose a Mechanics Lien that you attach a writing, a written agreement? No, because you can have an oral agreement. I mean, and then there's nothing to attach. That's not what they pled. Instead, what they pled was a lot of evidence, I think, that favors me in showing that their claim that they filed bore no relationship to what they're talking about in the claim. Because there's any number of documents, 20-some pages of documents, many, if not most of which, have dates on them. None of which are dated the date put forward in the claim that they filed. I mean, what it's created is a great deal of confusion. And one of the purposes behind the filing requirement that a claim for lien be filed is to clear up some confusion. It's to let a third party look at the claim and decide whether they have to worry about it. And that just wasn't done here. And I think it is interesting, and the Court has pointed this out in a question to Mr. Richardson. We've got two bites of the apple here. They filed a claim for lien, and then they filed an unamended claim for lien. And they still identified a contract which, to this date, has never been produced. So I think we can only assume at this point, since there have been three attempts to plead, that it doesn't exist. It just doesn't exist. And I know that the appellant has also made the argument that it makes a difference in terms of the completion date. But in order to even evaluate whether the completion date is within four months of the date of filing of the lien or the suit, you've got to know what the contract is. And you can't count backwards four months to a contract that doesn't exist. I mean, there are cases that talk about what is and isn't required to be included in the claim for lien. And all that really has to happen is that the third parties have notice of the existence, nature, and character of the claim. If there is more, though, it needs to be right. So it doesn't, in some sense, matter whether there was a requirement that, for example, they put in the date of the contract, or that they put in the completion date, or that they put in the amount of the contract. Because the fact of the matter is, on the ground, they put those in, and all of those were wrong. So how are we, as a third party, supposed to be able to determine whether this contract has been completed, whether it was ever performed, whether it exists? I think that's really a lot of the point behind Ronning, and also a very interesting case, also in this district, it's Bale. I mean, you look at the facts of that case, you understand, I think, why it was a two-to-one decision. I mean, it was a claim for lien that was made on a pre-printed form for a contractor. Had the contractor's name pre-printed in the form, but was signed by somebody, Bale, I forget, Christine Bale, or something like that, some individual with the same last name as the name in the contractor's corporate name, signed both his claimant and also just as affiant. And this court said that that was not sufficient claim for lien to meet the requirements of Section 7. I mean, again, it just didn't identify the proper parties, even though it was on the claim for lien. Now, we're no near that here. We have a case here where we have significant variation between what is alleged to be the contract and what was included in the claim. There's just no way we can determine, you know, whether there was a claim there. And I think that the cases that Mr. Richardson cited, the United Corp. is what I call it, Olin, Hartman, North Shore, and Braun-Steva, I think are all interesting and also illustrate the point that I'm trying to make. So many of those cases are completion cases. In other words, the court is coming back from what was given as a completion date and determining whether or not that date was met for purposes of the Act. The cases that determined that it was met all started from the premise that the claim itself was spatially valid in describing the contract. Now, there is one exception, and that's the Hartman case. But in that case, notwithstanding that there are about 20 defendants, it doesn't appear that any of them are third parties, so they're not entitled to any heightened scrutiny. I just think that the way that the courts have been evaluating this, they first look to see whether the claim is valid on its face. Because once the claim is valid on its face, then it gives the notice that the statute contemplates, and then a third party looking at it can decide whether or not it's enforceable against them because they can determine if there's a validly identified contract, when the four months runs, and whether they're in or out. Here, we don't have that. We just do not have that. We've got two bites at the apple on the claim itself and three bites at the apple in terms of pleading, and there just hasn't been a contract identified that is the contract that is identified in both claims for lien. There's just no way that we can look at that and figure out whether or not we're within the four months. I feel as though I should perhaps say one thing about the Home Repair and Remodeling Act, if I may. It's not my issue, and as I indicated in my brief, I don't think it makes that much difference. But there's an interesting point, because if you look to the revised Section 30 of the Home Repair and Remodeling Act, it says that a consumer can bring an action pursuant to Section 10A of the Consumer Fraud and Deceptive Business Practice Act. Well, if you look at Section 10A, it says any person who suffers actual damage may bring an action, and it says the court, in its discretion, may award actual economic damages or any other relief which the court deems proper. I guess in going back and looking at what happened in this case in the early days, it strikes me that while it may not necessarily have been explicitly tied to the Consumer Fraud and Deceptive Business Practices Act, in fact, the court would award a relief that they could award if the other defendant had chained it through to that point. Because even under revised Section 30, the remedies that are available through the Consumer Fraud Act are pretty broad. I think striking the contract would be within any other relief which the court deems proper. From my perspective, it still doesn't change anything because we've got two contracts or maybe not. I mean, I don't even know. I don't know to date whether there is any contract that is a November 14, 2012 contract. But like I said, I'm repeating myself. I'm happy to answer questions. Was SEFCU aware of the fire damage to Baker's house? I mean, either at the time of the construction project or shortly thereafter? It doesn't make any difference. I'm just asking as a matter of... I know that the mortgage predated all of this. Right. I would think that they would know around then. I would too. And there's no requirement, and this is an area that I'm not real familiar with of the law, no requirement that SEFCU as the mortgage holder either has to approve the contractor or be aware of the renovation or actually it's not renovation, it's the new work that's being done on the premises to restore the building? Well, I'd have to look at the mortgage. I know that there is a form of the mortgage that contemplates the money to be paid into SEFCU, and then they participate in paying that. I don't remember off the top of my head. Okay, so that would make sense. And so there's something in the mortgage document itself that requires that. Yeah, there is. And something depends on what mortgage it is. If it's a first memory under the Fannie Mae form, yeah, there is something that's supposed to happen. Supposed to doesn't always mean does. That makes sense, and you've kind of clicked that I did know that and brought that back. But it kind of leads me to the next question is it just seems so odd, and I know that this act has to be technically complied with, and you're arguing it wasn't. But SEFCU knew Sutton was doing this contractual work. They knew there was a reason for it. They knew there had been a fire. It just seems like how could they not know that this mechanics lien that's been filed by Sutton was for the work that was being done to restore this burned-down premises? And I understand you can rely upon the technicalities of the statute, but it seems like, I don't know what you'd call it, form over substance. If I were in your shoes, I'd be saying it's a mortgage instrument. But it just seems like SEFCU darn well knows that the contract that they described incorrectly was the agreement, whether in written form or not, whether a comparative statute or not, between Sutton and Baker. But they may escape the establishment of the mechanics lien because of a mistake that they actually know was just the wrong date put into the mechanics lien, not matching what was put into the complaint. And I'd like to see them, of course, use the word escape. Because if you look at the facts here, there was a fire at the owner's house on October 3, 2012. On October 4, 2012, magically there appeared at her doorstep precisely the kind of actor that the Home Repair Act is intended to protect people against. And they presented to her a contract which violates the Act, including a completion amount. They violated the Act by not including a brochure. And then they plunged ahead with the work and went through 25 pages of additions and change orders and things like that, resulting in work which the owner indicated in other pleadings and court actions below, they weren't satisfied. So I recognize that to a certain extent we're talking equity here, but I hesitate to suggest that we're the bad actor if we're going to be talking about equity. And the other point that I would make, if I may in response to your question, sure, we probably knew that there was some contract, but which one? I mean, we have to be able to evaluate whether it's a valid contract and whether there's money owed. And if they're telling us it's one contract in a claim twice, and then they're telling us in a suit it's another contract three times, how can we possibly evaluate that? I mean, yeah, assuming we heard the house burn down, fine. We would like to have our collateral rebuilt so it has value. It makes perfect sense. But we have to be able to know what's going on. And when we have a contractor that shows up the day after the fire and signs a complaint that violates the act in multiple ways and then suggests that there may be a different contract, yeah, how can we evaluate that? That was a rhetorical question, right? Oh. No, I appreciate your response. Okay. And you certainly cleared up what was kind of a question that was kind of bothering me. Your response is a very good one, and I'm sure if counsel has a response to your response, he'll let us know. I'm sure he will. Okay. Thank you. Rebuttal, if you want it. I want to correct one statement I made in opening argument. If you look at Judge Funk's opinion on March 22, 2015, which is in the record. What page of the appendix? It says 8167 at the bottom, Your Honor. And we had to correct the record. I hope I got the right one. That was one where a few pages were missing. It says in addressing whether it was an oral contract or a written contract and what the court took it to be and what we did. I'm sorry. May I show the court? Got it? Okay. Yeah. I got it now. Thank you. What we did when we amended the complaint for the last time was we preserved the prior account about the written contract that the court said was gone, but we attempted to show this as an oral contract because that's what Judge Funk said. That was the only shot you had left. And that's what the court took it to be because we didn't reference the writing between the parties. We referenced the work done. And that's what the court saw in the second paragraph down, presumably because the court struck that's what the court takes it to be, the written contract and any reference to it. But as to the argument the counsel is presenting to the court, which is if you're a third party and you're not the homeowner, you are entitled to absolute, no mistakes, compliance with the mechanics, lien, materials, information contained in there, I disagree. If you take Mr. McGonaghy's argument to the extreme, if we miss that date by one day, it's wrong. And it's wrong and it's not right, and so they're off the hook. But what about two days or three days? And that's what the Hartman case was about. It said it is immaterial. The question is not whether it's wrong. It's whether it's material. And I still submit to this court it is not material, the date of the contract. That was the area we're essentially appealing from. And if you look, and I think if you look back at the Boling case and say, well, 1930, I understand it's the Supreme Court, but boy, I wasn't even born then. But that issue came back to the Supreme Court in the Connolly case in 1983, 50 years later. And they quote from Boling, and that's in page three of our reply brief, the doctrine of strict construction was never meant to be applied as a pitfall to the unwary, in good faith pursuing the path from which an adversary can overwhelm him for an immaterial misstep. Its function is to preserve the substantial rights of those against whom the remedy offered by the statute is directed and is never to be employed otherwise. So this isn't a one-day-off argument and you lose. It's are your substantial rights affected? And I listened to Tom's very good argument, and I didn't hear him explain how SEFCU's substantial rights were affected. And that's our point. Okay. Thanks to both of you. The case is submitted and the court stands in recess until further call.